UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IMG FRAGRANCE BRANDS, LLC,
a Delaware limited liability company,
DANA CLASSIC FRAGRANCES, INC.,
a Delaware limited liability company,
ZOHAR CDO 2003-1 LIMITED,
a Cayman Islands exempted company,
ZOHAR II 2005-1 LIMITED,
a Cayman Islands exempted company,
ZOHAR III LIMITED,
a Cayman Islands exempted company, and
IMG HOLDINGS, INC.,
a Delaware corporation,

    Plaintiffs,

—against—

HOUBIGANT, INC.,
a Delaware corporation,
ETABLISSEMENT HOUBIGANT,
a Lichtenstein corporation, and
MICHAEL J. SHERMAN,
an individual New York resident,

    Defendants.

09 Civ. ____



## COMPLAINT

Plaintiffs allege as follows:

### NATURE OF ACTION

1.     This action concerns a License Agreement between plaintiff IMG Fragrance Brands, LLC ("IMG") and defendants Houbigant, Inc. and Etablissement Houbigant (collectively, "Houbigant") under which Houbigant promised to license certain fragrance product trademarks to IMG for a period of five years, and further promised to sell those trademarks to IMG at the end of the term for a nominal fee of $1,000, plus any unpaid royalties. After the License Agreement expired, IMG had already paid over $9 million towards the total

45271

contemplated royalties of $10.5 million. IMG twice attempted to pay Houbigant the outstanding royalties, plus $1,000, to purchase the trademark rights, but Houbigant, evidently regretting the original agreement, refused to accept. By this lawsuit, IMG seeks declaratory relief and specific performance of Houbigant's obligation to sell the trademark rights.[1]

2. This action also seeks relief on behalf of certain of IMG's lenders, who, after a default by IMG, recently gained a controlling equity position in IMG's parent company from its former CEO and sole stockholder, Isaac Cohen. The lenders have since discovered a disturbing amount of wrongdoing by Cohen and his counterpart at Houbigant, Michael Sherman, and this lawsuit seeks to rectify certain of the damage they have wrought.

3. Among other things, the lenders discovered that Sherman and Cohen entered into a series of unauthorized and unlawful agreements that purported to amend the License Agreement, notwithstanding that the lenders maintained a security interest in the License Agreement and an express right to approve any amendments. These improper agreements include certain "consulting" agreements which purported to authorize exorbitant fees to Houbigant in exchange for no consideration. The apparent purpose for all of these agreements was to allow Cohen to maintain control over IMG while allowing Houbigant and Sherman to be paid far beyond what the License Agreement and financing agreements otherwise allowed. This lawsuit seeks to declare all of these unauthorized agreements void and to recover the damages caused by the defendants' unlawful conspiracy to execute them.

---

[1] This case is related to *Houbigant v. IMG Fragrance Brands*, 09 Civ. 839 (S.D.N.Y.), in which Houbigant alleges that IMG is infringing the trademarks that were the subject of the License Agreement. This action seeks to declare IMG the owner of those same trademarks, and IMG's ownership of the trademarks is a primary defense to the infringement action. Todd Harrison, counsel for defendants in this action and plaintiffs in the infringement action, has agreed on his clients' behalf to consolidate the two cases.

## PARTIES

4. Plaintiffs IMG Fragrance Brands LLC ("IMG"), IMG Holdings, Inc. ("IMG Holdings") and Dana Classic Fragrances, Inc. ("Dana") are Delaware limited liability companies with their principal place of business in Deerfield Beach, Florida. IMG Holdings is the sole member of IMG and the parent of Dana. These entities are part of a group of businesses known as "Dana," which makes and sells a portfolio of iconic fragrance products, including the products that are at issue in this litigation.

5. Plaintiffs Zohar CDO 2003-1, Limited ("Zohar I"), Zohar II 2005-1 Limited ("Zohar II") and Zohar III Limited ("Zohar III," and collectively, the "Zohar Funds") are Cayman Islands exempted companies, with their principal place of business in New York, New York. The Zohar Funds are investments funds that make secured loans to, and acquire, distressed business, including Dana and its various affiliates.

6. Defendants Houbigant, Inc. and Etablissement Houbigant (collectively, "Houbigant") are corporations organized under the laws of Delaware and Lichtenstein, respectively. They are in the business of licensing trademarks and their only two employees are defendant Michael J. Sherman ("Sherman"), Houbigant's CEO, and his wife Frances Sherman. Houbigant's principal place of business is the Sherman's apartment, which is located at 333 East 68th Street, New York, New York.

7. In 2004, Michael Sherman pled guilty to falsifying business records and criminal possession of stolen property in connection with his role in stealing from distressed and bankrupt companies. He was sentenced to 2 ½ to 7 ½ years of imprisonment, and his workout firm agreed to pay $6 million in fines, along with the costs of prosecution.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because the action arises under federal law. In particular, this action asserts a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, and seeks a declaration in anticipation of, and in defense of, coercive relief brought against IMG under the Lanham Act, 15 U.S.C. § 1114. The Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the claim under the Declaratory Judgment Act.

9. With proper service, this Court will acquire personal jurisdiction over the defendants under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. § 301 because Sherman is a resident of New York and Houbigant regularly transacts business in New York.

10. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1) because all the defendants are located in the District. Alternatively, venue is appropriate under 28 U.S.C. § 1391(b)(3), because one or more defendants may be found in this District.

## STATEMENT OF FACTS

**The License Agreement**

11. On December 19, 2003, Houbigant and IMG entered into a License Agreement under which Houbigant granted IMG the exclusive, worldwide right to manufacture and distribute certain perfume and fragrance products developed by Houbigant and bearing its registered trademarks. Houbigant also agreed to "assist . . . in the promotion of the sales" of the licensed products, "so as to enhance the reputation" of the products. In exchange, IMG agreed to pay royalties of $175,000 per month over the Agreement's five-year term.

**The September 2004 Loans and Assignments**

12. On September 30, 2004, IMG (and various affiliates) entered into a Loan and Security Agreement with Congress Financial Corporation ("Congress"), with a maximum loan amount of $23 million. As part of that Agreement, IMG pledged substantially all of its assets as collateral to secure the loans. Isaac Cohen, IMG's CEO, also pledged his 100% ownership interest in the stock of IMG Holdings as collateral for the loans. The lenders were empowered to foreclose upon these assets, and Cohen's stock, upon an event of default.

13. In connection with the Loan Agreement, IMG and Houbigant executed a Collateral Assignment of License Agreement, under which IMG pledged its interest in the License Agreement as further collateral for the loans. The agreement required that IMG and Houbigant obtain the written consent of Congress before amending or modifying the License Agreement.

14. Houbigant, Inc. and Etablissement Houbigant, as Licensors under the Licensing Agreement, each separately executed the Collateral Assignment of License Agreement under the statement: "Each Licensor hereby consents and agrees to the provisions of the Collateral Assignment as of the date hereof."

15. At the same time, both Houbigant, Inc. and Etablissement Houbigant also entered in to a "Side Letter" agreement entitled "Licensor's Consent to Use of Trademarks and Products," under which they agreed (among other things) to give Congress written notice of any alleged default under the License Agreement, as well as an opportunity to cure such defaults on IMG's behalf.

16. Both the Side Letter and the Collateral Assignment of License Agreement expressly stated that they would be enforceable by Congress' successors or assigns. The Zohar

Funds have since succeeded to Congress' loans and to its rights under the Collateral Assignment of License Agreement and the Side Letter.

**The June 2007 Loans and Assignments**

17. In connection with a restructuring of the loans on June 28, 2007, Houbigant executed an additional Collateral Assignment of License Agreement and an additional Side Letter. These agreements provided Wells Fargo Foothill, Inc. ("Wells"), as agent for a new set of lenders, substantially similar rights as Congress had been given as part of the September 2004 agreements. In December 2008, Zohar II and Zohar III succeeded to Wells' loans and an affiliate of the Zohar funds succeeded to Wells as agent for those loans.

18. The June 2007 Collateral Assignment of License Agreement and Side Letter did not supersede or otherwise extinguish the ones executed in September 2004. Thus, any amendment of the License Agreement after June 28, 2007 required written consent of the appropriate agent under both agreements. Similarly, if IMG were to default under the License Agreement at any point after June 28, 2007, these same parties were entitled to notice and an opportunity to cure.

**The Unauthorized Agreements**

19. Notwithstanding these express and unambiguous strictures, Cohen and the Shermans executed at least nine agreements that purported to amend the License Agreement, without first seeking lender approval:

| No. | Agreement | Date |
|---|---|---|
| 1 | Second Deferral Agreement | May 22, 2005 |
| 2 | Third Deferral Agreement | Sept. 18, 2006 |
| 3 | Consulting Agreement | Sept. 18, 2006 |

| No. | Agreement | Date |
|---|---|---|
| 4 | Product Development and Marketing Agreement | Sept. 18, 2006 |
| 5 | Fourth Deferral Agreement | Nov. 30, 2006 |
| 6 | Amended Consulting Agreement | April 17, 2007 |
| 7 | Amended Product Development and Marketing Agreement | April 17, 2007 |
| 8 | Fifth Deferral Agreement | Aug. 27, 2008 |
| 9 | Second Amended Consulting and Product Development Agreement | Aug. 28, 2008 |

20. There is no written consent from any lender with respect to any of the above agreements.

21. The various Deferral Agreements changed the payment schedules for royalties, in exchange for interest and/or fees. The Fifth Deferral Agreement also purported to eliminate IMG's right to cure defaults under the License Agreement. To the extent the Deferral Agreements were executed in response to any alleged defaults of IMG, Houbigant failed to give written notice of those defaults to the lenders, as required by the Side Letters.

22. The lenders not only did not consent to the Deferral Agreements, but, at least as far as the Zohar Funds are concerned, they never would have done so. If there were a problem with IMG's ability to make royalty payments, the Zohar Funds would have used their leverage to force a renegotiation of the License Agreement, covered the shortfall themselves, or simply foreclosed on the loans.

23. The Consulting and Product Development Agreements were equally unauthorized and even more nefarious. They were originally executed at a time when the lenders, as a

condition for waiving the borrowers' defaults under the loans, insisted that IMG obtain a forgiveness of certain royalty obligations from Houbigant. IMG obtained the forgiveness the lenders sought, but then secretly executed the Consulting and Product Development Agreements which called for the precise amount of money supposedly "forgiven"—six months of royalties, totaling $1,050,000—to be paid to Houbigant, anyway.

24. The supposed "consideration" for these payments was Houbigant's agreement to "provide advice on entering markets" and on "finding distributors or customers" for the licensed Products. Houbigant retained "sole discretion" to determine whether these services would actually require anyone at Houbigant to travel anywhere. These "services" were illusory, as evidenced by (among other things) the following:

(a) The "services" duplicate Houbigant's obligation under the License Agreement to "assist . . . in the promotion of the sales" of the licensed products, and to "enhance the[ir] reputation."

(b) These "services" are capped at 40 hours per month under the Consulting Agreement and 20 hours per month under the Product Development Agreement, which represents hourly rates of $1,093.75 and $2,187.50, respectively.

(c) The Agreements were executed at a time when Sherman—Houbigant's CEO and half its "workforce"—was in prison. Thus, the "services" were presumably to be performed by his wife, Frances, who has described herself in Federal Election Commission disclosure forms as, variously, a "homemaker," "artist," and "actor."

25. The amendments to the Consulting and Product Development Agreements merely inflated the amounts owing and compounded the wrongdoing. There was no consideration, much less written lender consent, for any of them.

26. By failing to seek written consent for the various Deferral Agreements and Consulting and Product Development Agreements, Isaac Cohen prevented the lenders from foreclosing on the loans and taking away his controlling stock position in the business. From Houbigant's perspective, these agreements allowed it to extract payments from the Dana business that were otherwise unauthorized, and prevented the lenders from taking over the Dana business and either negotiating reduced royalties or simply terminating the License Agreement. Upon information and belief, Cohen and Sherman entered into an agreement, or conspiracy, to achieve these wrongful ends.

**The Zohar Funds Obtain Ownership of IMG Holdings**

27. The borrowers under the loan agreements were due to make a monthly interest payment on October 1, 2008, and they did not do so. The lenders responded by issuing a default notice and acceleration letter, dated October 10, 2008, which rendered the full amount of the loans immediately due and owing. On October 17, 2008, in exchange for withdrawing that exercise of the lenders' rights, Cohen contributed to the Zohar funds 75% of the stock in IMG Holdings.

28. Unbeknownst to the lenders at the time, the day before losing his ownership position, Cohen transferred over $500,000 of company funds to his personal bank account and the personal bank account of his mistress, Gina Zamarelli, who was also an officer of Dana. Upon information and belief, this theft, along with other self-dealing and wrongdoing, were

made possible by the unlawful conspiracy between Cohen and Sherman. (The plaintiffs are pursuing Cohen and Zamarelli's wrongdoing in separate proceedings in Florida.)

**IMG Exercises its Purchase Option**

29. The License Agreement expired by its terms on December 31, 2008. At that point, IMG had the right, for 30 days thereafter, to purchase the licensed trademark and other rights for $1,000, plus any outstanding royalties. Likewise, by virtue of the Side Letters, the lenders had the right to notice and an opportunity to cure any alleged default arising from the unpaid royalties.

30. Both IMG and the Zohar Funds exercised these rights by twice tendering to Houbigant an amount of money representing the outstanding royalties owed, and the $1,000 purchase price. IMG and the Zohar funds specifically asked Houbigant, if it believed the amount to be too little, to supply its own calculation and a short explanation for it. Houbigant refused both tenders, and further refused to supply its own calculation of what amount was owed. In fact, Houbigant took the position that IMG no longer had *any* right to the purchase option.

31. At no time prior to this litigation has Houbigant informed IMG or the Zohar funds of the amount it believes would satisfy the price owed under the purchase option.

**COUNT I—DECLARATORY JUDGMENT
(OWNERSHIP OF THE TRADEMARK RIGHTS)**

**(IMG v. Houbigant)**

32. All previous allegations are incorporated herein.

33. IMG validly exercised its right under the License Agreement to purchase the licensed trademark rights.

34. There is an actual controversy between the parties because Houbigant has refused to accept IMG's tenders and wrongly maintains that it continues to own the trademarks and related rights.

35. IMG is entitled to a judicial declaration that it is the equitable and lawful owner of the trademarks and related rights.

### COUNT II—BREACH OF CONTRACT
### (LICENSE AGREEMENT)

**(IMG v. Houbigant)**

36. All previous allegations are incorporated herein.

37. Houbigant breached the License Agreement by failing to sell the licensed rights as required under Section 9(e) of the License Agreement.

38. Houbigant also breached the implied duty of good faith and fair dealing by refusing to accept IMG's tenders and further refusing to notify IMG of what it considered to be the appropriate purchase price under the License Agreement.

39. IMG is therefore entitled to specific performance, *i.e*., a judicial order requiring Houbigant to formally assign the trademark rights to IMG as set forth in the License Agreement.

### COUNT III—DECLARATORY JUDGMENT
### (UNAUTHORIZED AGREEMENTS)

**(IMG, the Zohar Funds and Dana v. Houbigant)**

40. All previous allegations are incorporated herein.

41. All of the agreements in paragraph 19, as well as other "Deferral Fee Agreements" and agreements executed in connection therewith, were executed without prior written lender consent as required under both the September 2004 Collateral Assignment of License Agreement and the June 2007 Collateral Assignment of License Agreement.

42. All of these agreements are void, invalid and ineffective, and IMG, the Zohar Funds and Dana are entitled to a judicial declaration to that effect.

## COUNT IV—CIVIL CONSPIRACY

**(IMG Holdings, IMG, Dana and the Zohar Funds v. Sherman and Houbigant)**

43. All previous allegations are incorporated herein.

44. Sherman and Houbigant conspired with Cohen and/or Zamarelli to enable Cohen to maintain control of IMG Holdings, IMG, Dana, and all of the IMG related entities that were Borrowers or Guarantors under the various financing documents. The conspiracy had the dual purpose of enabling Cohen and Zamarelli to exploit the Dana business for their personal benefit and to enable Houbigant to extract payments from the Dana business that were otherwise unauthorized.

45. In furtherance of the conspiracy, Sherman, Houbigant, Cohen and/or Zamarelli caused IMG, Dana and/or Houbigant to enter into the unauthorized agreements described above, and further concealed the existence of these agreements, and any alleged defaults that may have engendered them, from the lenders.

46. IMG, Dana and the Zohar entities are therefore entitled to damages caused by this wrongful conduct, in an amount to be determined at trial, plus any other relief the Court deems just and proper.

## COUNT V—AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY

**(IMG Holdings, IMG and Dana v. Houbigant and Sherman)**

47. All previous allegations are incorporated herein.

48. Sherman and Houbigant aided and abetted Cohen's and Zamarelli's breaches of fiduciary duty to the various Dana entities and to their lenders (including the Zohar Funds) so as

to derive more profit from the Licensing Agreement than was permissible under that Agreement and the various financing agreements.

49. Houbigant and Sherman were aware that IMG was not authorized to amend the Licensing Agreement and could not enter the Consulting and Product Development Agreements without the express written consent of the lenders. Sherman's and Houbigant's conduct is the direct and proximate cause of financial harm to IMG Holdings, IMG and Dana.

50. IMG Holdings, IMG, Dana and the Zohar entities are therefore entitled to damages caused by this wrongful conduct, in an amount to be determined at trial, plus any other relief the Court deems just and proper.

### COUNT VI—BREACH OF CONTRACT
### (2004 COLLATERAL ASSIGNMENT OF LICENSE AGREEMENT)

**(The Zohar Funds v. Houbigant)**

51. All previous allegations are incorporated herein.

52. Houbigant breached the 2004 Collateral Assignment of License Agreement when it entered into the agreements in paragraph 19, as well as any "Deferral Fee Agreements" or other agreements executed in connection therewith. Houbigant's breach of the 2004 Collateral Assignment of License Agreement is the direct and proximate cause of financial harm to the Zohar Entities.

53. The Zohar funds are therefore entitled to damages caused by this wrongful conduct, in an amount to be determined at trial, plus any other relief the Court deems just and proper.

## COUNT VII—BREACH OF CONTRACT
## (2007 COLLATERAL ASSIGNMENT OF LICENSE AGREEMENTS)

### (Zohar II and Zohar III v. Houbigant)

54. All previous allegations are incorporated herein.

55. Houbigant breached the 2007 Collateral Assignment of License Agreement when it entered into the Fifth Deferral Agreement and the Second Amended Consulting and Product Development Agreement.

56. Houbigant's breach of the 2007 Collateral Assignment of License Agreement is the direct and proximate cause of financial harm to Zohar II and Zohar III.

57. Zohar II and Zohar III are therefore entitled to damages caused by this wrongful conduct, in an amount to be determined at trial, plus any other relief the Court deems just and proper.

## PRAYER FOR RELIEF
## AND DEMAND FOR JURY TRIAL

WHEREFORE, plaintiffs hereby demand a trial by a jury and judgment against defendants as follows:

(a) A judicial declaration that IMG is the equitable and lawful owners of the trademarks and related rights that were the subject of the License Agreement;

(b) An Order requiring Houbigant to formally assign the trademark rights to IMG as set forth in the License Agreement;

(c) Damages caused by the defendants' civil conspiracy, breaches of contract, and aiding and abetting of the breaches of fiduciary duty by Cohen and Zamarelli;

(d) Plaintiffs' costs, expenses and attorneys' fees incurred in connection with this action to the maximum extent permitted by law; and

(e) Such other and further relief as the Court may deem appropriate.

Date: New York, New York
April 9, 2009

Respectfully submitted,

By: *George Mahfood / CAM*
George Mahfood (GM-0578)
BROAD AND CASSEL
One Biscayne Tower, 21st Floor
2 S. Biscayne Blvd.
Miami, Fl 33131
Tel: (305) 373-9427
Fax: (305) 995-6437

*Counsel for plaintiffs IMG Fragrance Brands LLC, IMG Holdings, Inc. and Dana Classic Fragrances, Inc.*

By: *[signature]*
Hillary Richard (HR-6941)
Charles Michael (CM-0303)
BRUNE & RICHARD LLP
80 Broad Street
New York, New York 10004
Tel: (212) 668-1900
Fax: (212) 668-0315

*Counsel for plaintiffs Zohar CDO 2003-1, Limited, Zohar II 2005-1 Limited and Zohar III Limited*